UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
JnJacques Cesar, pro se,                              :
                                                      :
              Petitioner,    :    **MEMORANDUM AND ORDER**
                                                      :
              -against-     :    04-CV-3808 (DLI)
                                                      :
William Lape, Superintendent,                         :
Upstate Correctional Facility,                        :
                                                      :
             Respondent.    :
------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

      JnJacques Cesar ("Petitioner") was convicted on April 25, 2002 in New York State Supreme Court, Queens County, after a trial by jury, of three counts of criminal sale of a controlled substance in the third degree. The Appellate Division, Second Department, affirmed Petitioner's conviction on April 12, 2004. *People v. Cesar*, 774 N.Y.S. 2d 398 (2d Dep't 2004). The New York Court of Appeals denied Petitioner's application for leave to appeal on June 16, 2004. *People v. Cesar*, 3 N.Y.3d 638 (2004). Petitioner challenges his conviction through the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, on the ground that his due process rights under the Fifth Amendment were violated by the prosecution's 13-month delay in indicting him. Specifically, Petitioner argues that he suffered substantial prejudice because his ability to call potential alibi witnesses was impaired by the delay. For the reasons set forth below, the petition is denied.

1

## I. Facts

On February 11, 1999, Petitioner approached two undercover officers at the corner of 205th Place and Hollis Avenue in Queens and offered to sell them cocaine. Petitioner sold cocaine to the officers in exchange for $140 cash in pre-recorded buy money. Petitioner gave the officers his pager number and a code and instructed them to page him if and when they wanted to buy more cocaine. (Tr. at 421–27, 450–57.) The undercover officers conferred with their supervisor, Detective Kevin Daly, and decided to conduct a long-term buy operation instead of a buy and bust, whereby they would have arrested Petitioner immediately. (*Id*. at 481–82, 711–12.) In total, eight separate transactions occurred between Petitioner and undercover officers between February 11, 1999 and July 22, 1999. (*Id*. at 711–33.)

Detective Daly, assigned to the narcotics unit of the New York City Police Department and the case officer in charge of the operation, testified that, on March 24, 1999, the date of the fourth case buy, he parked around half a block away from the scene. After Detective Daly received a radio communication from one of the undercover officers reporting that a successful buy had just taken place, he followed Petitioner, who was traveling in the passenger seat of a white Mercedes that Detective Daly had observed from his parked location. Detective Daly pulled over the car for failing to signal on a u-turn and obtained Petitioner's name and address in Elmont, New York from inspecting his driver's license. (Tr. at 715–16, 721–23.) Detective Daly did not arrest Petitioner at the traffic stop. He testified that he and his colleagues were "building a case" in order to "gather more information from the defendant to find out where he [was] getting or receiving the product from or where he [kept] the product himself." (*Id*. at 712.) Detective Daly placed Petitioner's home under surveillance during three of the last four case

buys and once, on April 20, 1999, observed Petitioner exit his home prior to meeting the undercover officers to sell the cocaine. (*Id*. at 723–32.)

After the last arranged buy took place on July 22, 1999, the undercover officers unsuccessfully tried to contact Petitioner to continue buying more cocaine. One of the undercover officers testified to calling Petitioner's pager number about three or four times between August 1999 and January 2000, but Petitioner only answered once in January 2000 and told the undercover officer that he was no longer selling cocaine. (Tr. at 640–42.)

Detective Daly testified that, following the undercover officer's conversation with Petitioner in January 2000, he decided to conclude the long-term buy operation and attempted to locate and arrest Petitioner. From January to August 2000, Detective Daly conducted surveillance of Petitioner's house for thirty minutes to an hour, approximately one to three times per month. (Tr. at 733–36.) In response to Petitioner's motion to reargue a decision by Queens County Supreme Court, denying Petitioner's motion to dismiss the indictment due to prosecution delay, the prosecutor asserted that Detective Daly also conducted surveillance of the home of Richard Belony, the driver of the car in which Petitioner had been riding when Detective Daly identified him after the fourth case buy, and filled out a "Wanted Card." (Resp't Ex. E at 3.) These initiatives were met with negative results. (*Id*.)

While testifying at a hearing to suppress identification testimony held on May 16, 2001, Detective Daly provided additional details about his efforts to locate Petitioner. On January 9, 2000, in response to an inquiry from Detective Daly, the Nassau County Police Department contacted Detective Daly and informed him that a man with the name "Patrick Cesar" was listed as living at the same Elmont address given by Petitioner and sent him a photo spread of the man.

On February 4, 2000, Detective Daly showed the photo spread to the two undercover officers who had worked on the case buys, and they positively identified the man as Petitioner. Detective Daly testified at the hearing that, at around that time, he discovered that Petitioner had a prior felony conviction from an arrest in Nassau County and had a probation officer in New York City. On August 28, 2000, Detective Daly received a call from Petitioner's probation officer notifying him that Petitioner was scheduled to report to the probation office in Brooklyn later that day. Detective Daly arrested Petitioner when he arrived at the probation office for a hearing on August 28, 2000. (Hr'g at 13–17, 26, 33–34, 39, 42–43.)

Petitioner was arraigned in Queens County Supreme Court. On January 17, 2001, Petitioner moved the trial court to dismiss the indictment on the ground that the 13-month delay between the last cocaine sale, July 22, 1999, and the arrest, August 28, 2000, was unjustified and constituted a denial of due process because of prejudice to Petitioner's ability to locate alibi witnesses. In the alternative, Petitioner requested a hearing to ascertain the efforts made by law enforcement to arrest him. (Resp't Ex. A.) On February 22, 2001, the state court denied the motion to dismiss the indictment and Petitioner's request for a hearing, because "the defendant [had] failed to show that the length of the pre-indictment delay was so long as to be prejudicial in and of itself or that actual prejudice [had] occurred as a result of the pre-indictment delay." (Resp't Ex. C.)

On July 2, 2001, Petitioner filed a motion to reargue his prior motion for dismissal, arguing that he had indeed suffered actual prejudice because potential alibi witnesses were unable to recall the time periods in which the crimes Petitioner was indicted for occurred. Petitioner reiterated his alternative request for a hearing to determine the existence of actual

4

prejudice created by the pre-indictment delay. (Resp't Ex. D.) On October 16, 2001, the trial court denied Petitioner's motion and adhered to its original decision denying dismissal. (Resp't Ex. F.)

On March 27, 2002, following a jury trial that included testimony from Detective Daly and both undercover officers, Petitioner was found guilty of three counts of criminal sale of a controlled substance in the third degree. The judgment of conviction was entered by Queens County Supreme Court on April 25, 2002. Petitioner appealed the conviction to the Appellate Division, Second Department, on the ground that the thirteen-month delay in prosecuting him, and the denial of his motion to dismiss the indictment on that basis, violated his due process rights. On April 12, 2004, the Appellate Division affirmed the trial court's decision, holding that "[t]he People presented a reasonable explanation for the 13-month delay . . . . [and] no hearing was necessary . . . . because the record was fully developed as to the reasons for the delay." *People v. Cesar*, 774 N.Y.S.2d 398 (2d Dep't 2004).

Petitioner sought leave to appeal to the New York Court of Appeals, raising the same due process claim. On June 16, 2004, the New York Court of Appeals denied Petitioner's leave to appeal application. *People v. Cesar*, 3 N.Y.3d 638 (2004). Having exhausted all state court claims, Petitioner timely filed the instant petition for a writ of habeas corpus on September 1, 2004. Petitioner asserts the same constitutional claim he raised in the state courts, that "the thirteen-month, unjustified pre-indictment delay in prosecution, and the summary denial of Petitioner's motion to dismiss on that basis" violated his due process rights, and insists that he suffered prejudice by losing potential alibi witnesses. (Pet'r Mem. at 6; Appellant Br. at 14.)

## II.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), where claims in state court were "adjudicated on the merits," the federal district court may grant a petition for a writ of habeas corpus only upon a finding that the state court proceeding

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Habeas relief is available under the "unreasonable application" clause "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. In reviewing the state court decision, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Pre-Indictment Delay

Petitioner argues that his petition should be granted because the prosecution failed to indict him in a timely manner, as thirteen months passed between the last cocaine sale and his arrest, in violation of his due process rights under the Fifth Amendment as established in *United States v. Marion*, 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

Under *Marion*, a petitioner must show that the pre-indictment delay "caused substantial prejudice to petitioner's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Id.* at 324. "A defendant bears the 'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (citing *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir. 1990); *United States v. Hoo*, 825 F.2d 667, 671 (2d Cir. 1987)). Determination of whether a delay has caused actual prejudice requires a "delicate judgment based on the circumstances of each case." *Marion*, 404 U.S. at 325. However, "proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not . . . . automatically valid." *United States v. Lovasco*, 431 U.S. 783, 789, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977). Furthermore, "rely[ing] solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost" is insufficient for showing actual prejudice. *Marion*, 404 U.S. at 325–26; *see United States v. Elsbury*, 602 F.2d 1054, 1059 (2d Cir. 1979).

> There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a

7

> violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Marion*, 404 U.S. at 325 n.18 (quoting *Hoffa v. United States*, 385 U.S. 293, 310, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966)).

### 1. Substantial Prejudice

Petitioner has failed to prove that he was substantially prejudiced by the pre-indictment delay. As a preliminary matter, length of delay, by itself, does not show substantial prejudice. *Compare Marion*, 404 U.S. at 325 (finding that a 38-month delay did not violate due process), *and Wolfe v. Bock*, 412 F. Supp. 2d 657, 679–81 (E.D. Mich. 2006) (finding that a 15-year delay did not violate due process), *with United States v. Gross*, 165 F. Supp. 2d 372, 380–81 (E.D.N.Y. 2001) (finding that a nearly ten-year delay did violate due process).

Petitioner claims that he suffered actual prejudice because he was unable to call "potential alibi witnesses" due to the delay. (Appellant Br. at 14.) However, Petitioner has not identified a single person who might have been helpful in establishing an alibi defense. Nor has he provided information regarding his whereabouts on the dates of the sales. Petitioner's claim that potential witnesses' memories of the dates in question would have been impaired does not satisfy his burden. Petitioner's potential prejudice claims are protected instead by the applicable statute of limitations. *See Marion*, 404 U.S. at 322 ("The law has provided other mechanisms, [primarily, the statute of limitations,] to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge."). Since the prosecution

indicted Petitioner well within the allowable statutory limit, this is not the type of "overly stale criminal charge" disfavored in *Marion*. *See id.*

## 2. Intentional Government Conduct

Petitioner also fails to prove that the pre-indictment delay was caused by intentional government conduct. Petitioner claimed in his appellate brief that the prosecution did not establish good cause for the delay and that the officers' efforts to arrest him were "half-hearted at best" and "resulted from inertia, not legitimate delays." (Appellant Br. at 12–13.) However, Detective Daly and the undercover officers made regular efforts to contact or locate Petitioner between the last case buy and Petitioner's arrest.

Between August 1999 and January 2000, the undercover officers paged Petitioner three or four times in an attempt to set up additional case buys. Once it was determined that Petitioner did not want to sell more cocaine, Detective Daly took over and concentrated on arresting Petitioner. Detective Daly's efforts between January and August 2000 included: (1) conducting surveillance of Petitioner's house a couple times per month; (2) conducting surveillance at the home of Petitioner's associate; (3) filling out a Wanted Card; (4) corresponding with the Nassau County Police Department regarding Petitioner's prior conviction; (5) obtaining a photo spread to show to the undercover officers for identification; and (6) contacting Petitioner's probation officer.

The court finds these efforts to be credible and reasonable. Furthermore, Petitioner has not pointed to any specific conduct showing that the "the delay was an intentional device to gain tactical advantage over the accused." *Marion*, 404 U.S. at 324. Vague and unsubstantiated allegations regarding lack of diligent investigatory efforts are insufficient for showing that

9

intentional government conduct caused the pre-indictment delay. *See Salcedo v. Phillips*, No. 04 Civ. 7964, 2005 WL 2211318, at *18 (S.D.N.Y. Sept. 13, 2005). Therefore, the state court decision affirming Petitioner's conviction and rejecting his arguments concerning pre-indictment delay was not "contrary to," and did not involve an "unreasonable application" of, clearly established Federal law.

**IV.    Conclusion**

For the reasons set forth above, the petition for a writ of habeas corpus is denied. Petitioner further is denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

DATED:    Brooklyn, New York
          July 24, 2006

                                            _____/s/_____
                                            DORA L. IRIZARRY
                                            United States District Judge